**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| Steve Fanady | ) |
| Petitioner | ) |
| | ) |
| v. | ) |
| | ) |
| Thomas Dart, as Sheriff of Cook County, | ) |
| Illinois, and Jane Gubser as | ) |
| Executive Director of the Cook | ) |
| County Jail Respondents | ) |

**MEMORANDUM IN SUPPORT OF PETITION FOR A WRIT OF HABEAS CORPUS**

## INTRODUCTION

**NOW COMES** the Petitioner, Steve Fanady, and respectfully submits this Memorandum in Support of his Petition for a Writ of Habeas Corpus. Petitioner has been held in the Cook County Jail since June 28, 2022—more than three and a half years—without any valid judicial order authorizing his detention. All contempt and body attachment orders under which Petitioner is held have expired by operation of law. Petitioner is imprisoned without lawful authority, in violation of the Fifth and Fourteenth Amendments of the U.S. Constitution. *See* 28 U.S.C. § 2254(a).

Petitioner appealed the initial contempt findings. The Appellate Court, First District, affirmed in *Harnack v. Fanady*, 2022 IL App (1st) 210143, and the Illinois Supreme Court denied Petitioner's Petition for Leave to Appeal.

Thereafter, Petitioner challenged the legality and duration of his continued confinement through a Motion to Purge or Vacate Contempt. The Appellate Court, First District, rejected all four of Petitioner's federal due process claims in *Fanady v. Harnack*, 2025 IL App (1st) 240835 (Rule 23 order), and the Illinois Supreme Court denied Petitioner's Petition for Leave to Appeal from that decision, thereby exhausting available state remedies on the constitutional issues presented in this habeas petition.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

### A. The Original Judgment of Dissolution

1. On August 3, 2011, the circuit court entered a Judgment of Dissolution of Marriage in *Harnack v. Fanady*, 08D2844, awarding Petitioner's ex-wife, Pamela Harnack ("Harnack"), 120,000 shares of CBOE Holdings stock from CBOE, not Petitioner. The 2011 Judgment also awarded Petitioner the contents of the accounts in Pictet & Cie (Exhibit B).

2. Harnack and her attorneys drafted the 2011 Dissolution Judgment, which stated:

> During the course of the marriage, the parties have acquired various marital properties, including but not limited to, the following:
>
> - The equivalent of 320,000 (Three Hundred Twenty Thousand) shares of Chicago Board of Options Exchange (CBOE) stock (Steve Fanady being 100% owner of at least 280,000);
> - CBOE stocks in the name of Alpha Industries, LLC ("Alpha");
> - CBOE stocks in the name of Fanmare Partnership ("Fanmare").

3. At the August 3, 2011 prove-up, Harnack testified that she had reviewed the Judgment of Dissolution, and the itemization of the marital property set forth in the Dissolution Judgment.

4. In a 2017 Cook County Circuit Court interpleader decision, the court found that, despite knowing that Petitioner, through Alpha, only had an interest in 120,000 shares, and that he had already withdrawn 120,000, Harnack procured a Judgment of Dissolution awarding her 120,000 shares. (Exhibit A). The court found that:

> inexplicably, however, Harnack failed to inform the court: (i) that there were never 320,000 shares because Fanady sold CBOE Seat No. 301003 prior to demutualization and IPO; (ii) that [Petitioner's partners,] Israelov, through ISFAN and Marme, through Fanmare each owned 50% interests in three of the former CBOE Seats that had each been exchanged for 240,000 shares of CBOE Holdings common stock; or (iii) that Fanady had already withdrawn 120,000 shares of the 240,000 shares.

In fact, Fanady had withdrawn 120,000 shares of CBOE stock in February 2011, six months prior to the 2011 Judgment of Dissolution.

5. The reason the court found that Harnack knew or should have known this is that:

> as early as May 2010, [Harnack knew] that Israelov was Fanady's partner in ISRFAN and that Marme was Fanady's partner in Fanmare because she disclosed the names of Israelov and Marme as part of her 'Witness Disclosures' in the Divorce Action. Moreover, on June 21, 2010, Harnack's attorney deposed Israelov in the Divorce Action with respect to his partnership with Fanady/ Alpha in ISRFAN

Consequently, the court denied Harnack's claim to Petitioner's business partners' stock assets at the CBOE. The court held that, "**Contrary to the property distribution in the Dissolution Judgment, Illinois law prohibits the transfer of ISRFAN' s or Manne' s property to Harnack**."

6. Harnack took no action to enforce the 2011 Judgment of Dissolution for over eight years. On December 9, 2019, she filed a Motion to Compel Compliance with the Judgment of Dissolution.

7. On December 11, 2020, the trial court entered an Order granting Harnack's Motion. Almost nine years after the 2011 Judgment of Dissolution, the Order directed Petitioner to transfer the 120,000 shares of CBOE stock to Harnack, or, if he no longer possessed the shares, to pay Harnack their then-current value of $10,000,000. Petitioner was given until December 18, 2020—one week—to comply.

8. Petitioner did not and could not comply with the December 11, 2020 Order. The CBOE shares had been transferred out of Petitioner's control and liquidated in February 2011, even before the entry of the Judgment of Dissolution as the 2017 interpleader decision affirmed. In addition, at the time of the December 11, 2020 order, and at all times thereafter, Petitioner did not possess or control any CBOE stock, nor did he ever have $10,000,000. That non-compliance—based on impossibility rather than recalcitrance—led to the contempt findings that are the subject of this habeas petition.

**B. Contempt Proceedings and Initial Orders (February - June 2021)**

9. On February 9, 2021, the court entered an Order of Adjudication of Indirect Civil Contempt and Order of Commitment (the "Commitment Order"), finding Petitioner in indirect civil contempt for failure to comply with the December 11, 2020 Order. The Commitment Order committed Petitioner to the custody of the Sheriff and provided that he could purge himself by either transferring the 120,000 shares of CBOE stock or paying $10,000,000 to Harnack.

10. On February 10, 2021, the court entered a Body Attachment Order (the "Body Attachment") directing the Sheriff to seize Petitioner. Unlike the Commitment Order, the Body Attachment did not itself remand Petitioner to the Cook County Jail but instead permitted the Sheriff to release Petitioner if he deposited $10,000,000 with the Sheriff or the court.

11. Petitioner appealed the contempt findings. The Appellate Court, First District, affirmed in *Harnack v. Fanady*, 2022 IL App (1st) 210143. Petitioner then filed a Petition for Leave to Appeal to the Illinois Supreme Court. On November 26, 2025, the Illinois Supreme Court denied the Petition for Leave to Appeal.

12. Petitioner was not taken into custody by the Sheriff after the Commitment Order and Body Attachment Order were issued. Those orders expired by operation of law one year after their issuance—on February 9, 2022 and February 10, 2022, respectively—pursuant to 735 ILCS 5/12-107.5(a), (c), which provides:

> (a) No order of body attachment or other civil order for the incarceration or detention of a natural person respondent to answer for a charge of indirect civil contempt shall issue **unless the respondent has first had an opportunity**, after personal service or abode service of notice as provided in Supreme Court Rule 105, **to appear in court** to show cause why the respondent should not be held in contempt.
> (c) Any order issued pursuant to subsection (a) **shall expire one year after the date of issue.** 735 ILCS 5/12-107.5(a), (c) (emphasis added)

**C. Extension Without Hearing and Second Body Attachment (March - June 2022)**

13. More than one month after the original orders had expired, on March 15, 2022, Harnack filed a Motion to Extend the Body Attachment. Petitioner opposed this motion, arguing that a new

evidentiary hearing on indirect civil contempt was constitutionally required before any replacement orders could be entered.

14. The trial court overruled Petitioner's objection and granted Harnack's motion without conducting an evidentiary hearing.

15. On June 21, 2022, the court entered a new (second) Body Attachment Order. Critically, however, no new Commitment Order (i.e., no new Order of Adjudication of Indirect Civil Contempt and/or Order of Commitment) was entered to replace the original Commitment Order that had expired on February 9, 2022.

**D. Fanady Taken into Custody and Current Status**

16. On June 28, 2022—one week after the new Body Attachment Order was entered—Petitioner surrendered to the Sheriff. He has remained in the Cook County Jail continuously since that date, for a period now exceeding three and a half years. Petitioner is the longest serving civil detainee in Illinois history. He is currently 61 years old, handicapped, and has no criminal record.

17. As of the date of this memorandum, Petitioner remains in custody despite the expiration of all orders authorizing his confinement:

- The original Commitment Order expired on February 9, 2022 (per 735 ILCS 5/12-107.5(a), (c));
- The original Body Attachment Order expired on February 10, 2022 (per 735 ILCS 5/12-107.5(a), (c)); and
- The second Body Attachment Order expired on June 21, 2023 (per 735 ILCS 5/12-107.5(a), (c)).

No new Commitment Order was ever entered after February 9, 2022. Thus, no lawful order of adjudication finding Petitioner in indirect civil contempt, committing him to jail, or authorizing the Sheriff to seize him remains in effect.

The legal consequence is dispositive. The Sheriff's authority to seize a person under a body attachment and his authority to incarcerate that person under a commitment order are legally

distinct, requiring separate valid judicial orders. Since February 9, 2022, no valid order has adjudicated Petitioner in contempt and committed him to jail. Holding him under a body attachment alone — with no companion commitment order — is the constitutional equivalent of imprisoning a criminal defendant under an arrest warrant without a judgment of conviction. It is unauthorized by law and violates due process.

**E. Exhaustion of State Court Remedies**

18. While in custody, Petitioner sought relief directly from the Illinois Supreme Court. On February 28, 2023, he filed a Motion for Supervisory Order under Supreme Court Rule 383 in *In re Fanady v. Forti*, No. 129434, asking that court to direct Judge Michael A. Forti to comply with 735 ILCS 5/12-107.5(a), (c), Cook County Local Rule 13.8(a)(iv), and controlling Illinois case law limiting civil contempt incarceration. On March 27, 2023, the Illinois Supreme Court entered a one-line order stating only: “Motion by Movant for a supervisory order. Denied.” The Clerk served that order on counsel and on Judge Forti, and the Court gave no reasons and did not address the merits of Petitioner’s due-process challenge to his ongoing civil confinement.

19. Petitioner filed a Motion to Purge or Vacate Contempt on July 28, 2022. After an evidentiary hearing held in January and April 2023, the trial court denied the motion on April 3, 2024 with a very brief oral ruling. Petitioner appealed, and on June 28, 2024, the Appellate Court acknowledged that Petitioner had been in custody for two years and recognized that civil contempt may lose its coercive effect after passage of time. The court remanded for the trial court to make explicit findings on this issue.

20. On remand, however, Judge Forti did not convene any new evidentiary hearing focused on whether Petitioner’s detention had lost its coercive effect and become punitive. He took no additional testimony or exhibits, and did not conduct a fact-based, Local Rule 13.8(a)(iv) review of Petitioner’s present ability to purge, or of the realistic coercive effect of continued incarceration.

Instead, on July 31, 2024, the court issued a brief written order declaring that Petitioner's confinement "remains coercive and is not punitive," resting solely on its prior assessment of the case.

21. On April 11, 2025, the Appellate Court held that the trial court retains jurisdiction to conduct Local Rule 13.8(a)(iv) hearings even while an interlocutory appeal was pending, recognizing that such hearings are necessary to assess whether the contemnor's detention remains coercive. Since May 7, 2024, the court has not held a single compliance-status hearing under Local Rule 13.8(a)(iv), despite the continuing requirement of 30-day review.

22. On May 5, 2025, the U.S. District Court for the Northern District of Illinois dismissed Petitioner's previous federal habeas petition on *Younger* abstention grounds, filed on September 13, 2023, holding that state court proceedings were the appropriate forum and that state courts afforded an adequate opportunity for Petitioner to present constitutional claims. That dismissal was without prejudice, permitting this petition following exhaustion of state remedies.

23. The 2023 petition raised four due process grounds for relief, each arising from the expiration of all court orders authorizing Petitioner's detention under 735 ILCS 5/12-107.5(a)(c), which imposes a one-year limit on civil body attachment and commitment orders. Petitioner argued that the Sheriff was holding him without any valid judicial authorization; that even the second Body Attachment Order entered June 21, 2022 — under which he was seized — was never accompanied by a new Commitment Order actually authorizing his incarceration; that the circuit court failed to conduct the periodic evidentiary hearings due process requires to assess whether continued detention remained coercive rather than punitive; and that his confinement exceeded six months without the finding of recalcitrance Illinois law requires to sustain detention beyond that threshold.

24. On June 24, 2025, in *Fanady v. Harnack*, 2025 IL App (1st) 240835 (Rule 23 order), the Appellate Court affirmed the trial court's denial of Petitioner's Motion to Purge or Vacate Contempt and expressly rejected each of Petitioner's four federal due process challenges to the legality and duration of his confinement (lack of lawful authority, loss of coercive effect, absence of a recalcitrance finding beyond six months, and failure to provide adequate periodic review under Local Rule 13.8(a)(iv)). Petitioner sought leave to appeal to the Illinois Supreme Court, which was denied, thus exhausting all available means of state court review.

25. The Appellate Court's June 24, 2025 decision, while correctly reciting the applicable constitutional standards from *Jackson v. Indiana*, made critical errors in applying those standards to Petitioner's case. The court minimized the significance of Petitioner's alleged inability to comply with the purge condition, downplayed the extraordinary length of confinement (now exceeding three and a half years), and failed to credit the uncontroverted evidence that the SF Trust has been exhausted, and Petitioner has no realistic means to satisfy the $10 million judgment. The court's determination that continued incarceration remains "coercive" in these circumstances is contrary to *Jackson*'s requirement that the nature and duration of confinement bear a reasonable relation to its purpose, and is based on an unreasonable determination of the facts presented at the Motion to Purge or Vacate hearing. This petition seeks federal habeas relief on that basis.

26. This Court previously dismissed Petitioner's habeas petition in Case No. 23 cv 5806 on *Younger* abstention grounds, holding that state court proceedings provided an adequate forum for Petitioner's constitutional claims. That dismissal was without prejudice. Since that dismissal, Petitioner has fully exhausted all available state court remedies. On June 24, 2025, the Illinois Appellate Court, First District, expressly rejected each of Petitioner's four federal due process claims in *Fanady v. Harnack*, 2025 IL App (1st) 240835. The Illinois Supreme Court then denied Petitioner's Petition for Leave to Appeal, rendering the state court proceedings final. *Younger*

abstention no longer applies, and this Court may now properly exercise jurisdiction over this petition.

## ARGUMENT

### I. 28 U.S.C. §2241 vs. 28 U.S.C. §2254

27 .Petitioner proceeds under 28 U.S.C. § 2254 because he is in custody as a result of state-court contempt proceedings, and the Illinois appellate courts have adjudicated his federal due process claims on the merits. *See Walker v. O'Brien*, 216 F.3d 626 (7th Cir. 2000).

28. In the alternative, if this Court concludes that Petitioner is not "in custody pursuant to the judgment of a State court" within the meaning of § 2254—because all orders authorizing his detention have expired and the Sheriff now holds him without valid judicial authorization—this petition is cognizable under 28 U.S.C. § 2241. *See Morales v. Bezy*, 499 F.3d 668, 670 (7th Cir. 2007). Petitioner therefore requests that the Court construe his habeas petition under § 2254, or, if it deems § 2254 inapplicable, under § 2241.31.

29. Petitioner was able to find one habeas corpus case filed in this district by a contemnor who was in custody because of findings of indirect civil contempt in a divorce case, and that case was brought under 28 USC §2254. (See *Ehlers v. Gallegos*, 2020 U.S. Dist. LEXIS 2028 (NDIL 2020)). However, the facts and grounds alleged in *Ehlers*, id., differ significantly from those in the instant case, (not the least of which is that in *Ehlers*, id. the contemnor had been released from custody after purging himself of contempt by paying the sum due.) *Ehlers*, is no help on the question of under which statute, §2254 or §2241, the Petitioner brings his case.

30. Petitioner is aware of the domestic relations exception to federal jurisdiction. This recitation of events is not being done to insert matters of domestic relations law into this case. Petitioner is only setting out the procedural history that precedes the filing of this case because it

is necessary to give context to his grounds for relief, and to understand how his federal constitutional rights are being violated.

**A. Ground One: Detention Without Lawful Authority — All Orders Have Expired**

31. Despite there not being any non-expired court order to seize Petitioner (i.e. Body Attachment Order), or adjudicating Petitioner in indirect civil contempt and committing him to the Cook County Jail (i.e. Commitment Order), Petitioner has not been released from the Cook County Jail. Petitioner is and is being held pursuant to the second Body Attachment Order which expired on June 21, 2023, and the Commitment Order, which expired on February 9, 2022. This is akin to a criminal defendant being held in custody after the term of his sentence has run out. Throughout this memorandum, Petitioner uses the word "purportedly" to reflect his position that no lawful authority currently exists for his detention.

32. In *McNeil v. Director, Patuxent Institution*, 407 U.S. 245, 252 (1972), the U.S. Supreme Court found that while a sentencing court may have had authority to issue a initial commitment order, once "the State's power to hold him on the basis of that order has expired," *McNeil*'s continued confinement violated due process. In *McNeil*, the Court emphasized that Maryland's statutory scheme authorized only a brief, time-limited period of observation. Here, Illinois' § 12-107.5 one-year expiration serves a similar limiting function for civil contempt orders. The Court held that "a confinement that is in fact indeterminate cannot rest on procedures designed to authorize a brief period of observation." Id. at 249.

33. Petitioner is currently being held in custody in violation of his due process rights under the US Constitution by the Sheriff of Cook County on an expired Body Attachment Order that expired on June 21, 2023, and a Commitment Order that expired on February 9, 2022, (735 ILCS 5/12-107.5(a)(c) supra.), and must be released from any custody based on the indirect civil contempt in the *Harnack v. Fanady*, 08 D 2844 case, instanter.

In *McNeil*, the Supreme Court held:

> Petitioner is presently confined in Patuxent without any lawful authority to support that confinement. His sentence having expired, he is no longer within the class of persons eligible for commitment to the Institution as a defective delinquent. Accordingly, he is entitled to be released. *McNeil v. Director, Patuxent Institution*, 407 U.S. 245, 92 S. Ct. 2083, 32 L. Ed. 2d 719 (1972)

34. Here, Petitioner has been continually confined without statutory authority, and without the procedural safeguards necessary to protect his constitutional right to due process. The Illinois Legislature, recognizing the dangers of indefinite civil contempt detention, enacted 735 ILCS 5/12-107.5(a), (c), which provides an objective, statutory limit on the validity of civil contempt orders: "Any order issued pursuant to subsection (a) shall expire one year after the date of issue." 735 ILCS 5/12-107.5(a), (c).

35. The purpose of this one-year expiration date is explicit: to prevent civil contempt incarceration from lasting indefinitely at the discretion of individual judges. Rather than being able to last for years, dependent on each judge's individual discretion, the 735 ILCS 5/12-107.5(a)(c) one (1) year limit on the validity of civil contempt orders for incarceration puts an objective limit on incarceration for civil contempt. The reason is to assure that nobody can be held in jail on a civil contempt charge for more than one (1) year without a new petition for contempt, a new hearing, and a new opportunity to present defenses. Only then, if warranted, can new contempt finding and new orders for the seizure and commitment to jail of a civil contemnor be entered.

36. This assures that nobody can be held in jail on a civil matter for more than one (1) year unless a fresh look is given to the evidence, an opportunity to present new evidence is provided, and the appropriateness of incarceration be considered if there has still has been no compliance. Instead, the statute mandates that after one year, a civil contempt order automatically expires by operation of law. If continued incarceration is deemed appropriate, the trial court must conduct a new hearing, make new findings, and issue new orders. This procedural architecture ensures that:

- No person can be held on a civil contempt charge for more than one year without fresh judicial review;
- The trial court must re-examine the evidence;
- The contemnor has opportunity to present new evidence and changed circumstances; and
- The court must reaffirm its findings or release the contemnor.

Petitioner's case demonstrates explicit, systemic violation of this statutory framework.

All orders authorizing Petitioner's detention have expired under 735 ILCS 5/12-107.5(c):

- Original Commitment Order: Entered February 9, 2021; expired February 9, 2022
- Original Body Attachment: Entered February 10, 2021; expired February 10, 2022
- Second Body Attachment: Entered June 21, 2022; expired June 21, 2023

37. As of the date of this memorandum, more than three and a half years have elapsed since the last valid order authorizing Petitioner's detention expired. Petitioner must be released immediately. *McNeil*'s principle—that a person confined without any lawful authority violates due process—applies with equal force here: the state's own statutory scheme (735 ILCS 5/12-107.5) establishes that civil contempt orders 'shall expire one year after the date of issue,' and once expired they no longer supply statutory authority for continued confinement. The state court decisions finding otherwise are an unreasonable application of clearly established federal law, including *McNeil* and its progeny.

38. If Harnack seeks renewed civil contempt proceedings, she must file a new petition, and the trial court must conduct a new hearing with all attendant due process protections, including evidence that Petitioner has the present ability to comply.

**B. Ground Two: Detention Was Defective From Inception — No Commitment Order Existed**

39. No new Commitment Order was ever entered after the original expired on February 9, 2022. And no court has addressed whether the second Body Attachment Order, which expired on

June 21, 2023, was itself valid, nor did it explain what authority now supports continued confinement—an omission that, taken alone, warrants habeas relief.

40. The significance of this timing cannot be overstated. The Sheriff had a full year from February 2021 to execute the original Body Attachment and Commitment Order, and declined to do so. Indeed, Petitioner was not taken into custody until June 28, 2022—almost one and a half years after he was held in contempt on February 9, 2021. By the time Harnack moved to extend the Body Attachment in March 2022, both original orders had already expired by operation of law for over a month.

41. The statute's one-year expiration is not a technical formality capable of cure by the simple entry of a new body attachment order on motion. It is a substantive limitation on the State's power to incarcerate for civil contempt. Once that period expires, the authority to hold the contemnor is extinguished. That authority could only be revived through a new contempt petition, a new hearing, and new findings—none of which occurred here. The entry of a second Body Attachment in June 2022, on motion and without a new evidentiary hearing, cannot substitute for the new Commitment Order that Illinois law requires before a person may be committed to custody.

42. Petitioner's detention was constitutionally defective not merely after the second Body Attachment expired on June 21, 2023, but from the very first moment of his incarceration on June 28, 2022. When the Sheriff seized Petitioner, there was already no valid Commitment Order in existence. The original Order of Adjudication of Indirect Civil Contempt and/or Order of Commitment had expired on February 9, 2022 — more than four months before Petitioner was seized — pursuant to 735 ILCS 5/12-107.5(a), (c). No new Commitment Order was ever entered to replace it.

The expired Commitment Order provided, in relevant part, that Petitioner:

> Is ordered committed to the Cook County Jail, there to remain until he shall have purged himself of contempt by: Transferring 120,000 shares of stock, ticker symbol

> CBOE, to Petitioner; OR transferring the sum of $10,000,000.00 (ten million dollars) to the Petitioner based on a reduced figure from the $85.97/share close price on December 11, 2020

43. The second Body Attachment Order entered June 21, 2022 authorized the Sheriff to seize Petitioner but did not adjudicate him in contempt or commit him to jail. Its operative language directed that upon seizure the Sheriff "may release the Respondent" upon deposit of $10,000,000, and that upon release "the Sheriff shall advise the Respondent that a hearing is continued 21 days from the date of release." This is the language of an arrest warrant — seizure followed by a hearing — not indefinite incarceration. In the civil contempt context, a body attachment order is the functional equivalent of an arrest warrant, while a commitment order is the functional equivalent of a judgment of conviction.

44. Just as no officer can imprison a criminal defendant indefinitely under an arrest warrant alone, the Sheriff cannot incarcerate a civil contemnor indefinitely under a body attachment alone, without a valid commitment order. Because no new Commitment Order was ever entered after February 9, 2022, Petitioner's confinement has been unauthorized from its inception. *McNeil v. Director, Patuxent Institution*, 407 U.S. 245, 92 S. Ct. 2083, 32 L. Ed. 2d 719 (1972), *Shillitani v. United States*, 384 U.S. 364, 371, 86 S. Ct. 1531, 1536, 16 L. Ed. 2d 622, 628, (1966)

45. Because no "second" or "new" Commitment Order (i.e. Order of Adjudication of Indirect Civil Contempt and/or Order of Commitment) had been entered to replace the expired order, the language committing the Petitioner to jail did not exist in any enforceable unexpired order on June 28, 2022 when Petitioner was seized by the Sheriff pursuant to the second Body Attachment. The only order under which Petitioner has been held in jail since he was seized by the Sheriff is the now expired June 21, 2022 "second" Body Attachment Order. This Body Attachment Order does not contain any language which adjudicates the Petitioner in indirect civil contempt or commits him to the Cook County Jail, or any other facility, after he has been seized.

46. Indeed, since no new Commitment Order (i.e. Order of Adjudication of Indirect Civil Contempt and/or Order of Commitment) was entered to replace the one that expired on February 9, 2022, the Sheriff and Director had no right to detain Petitioner on the second Body Attachment on June 28, 2022. In the civil arena, body attachment orders are civil arrest warrants, while orders of adjudication of civil contempt and/or commitment are civil orders finding guilt and sentencing a person to jail. This is confirmed by the language in the second Body Attachment which states:

> 1. The Sheriff of Cook County, the Sheriff of any County in Illinois, or any duly deputized Law enforcement agent to seize the Respondent: Name: STEVE FANADY Date of Birth: **/**/****. height *******, weight *****lbs, *******. Last known home address: ************* Lane, **********, IL 60*****,
>
> 2. If the Respondent, STEVE FANADY, is taken into custody, the Sheriff/law enforcement agency may release the Respondent after he shall deposit $10,000,000.00 (Ten Million Dollars) into escrow with the Sheriff or the court. If the Respondent is released pursuant to paragraph 2, the Sheriff shall then advise the Respondent that hearing on the petition is continued 21 days from the date of release and the Respondent is required to appear at 9:30 a.m. at the Daley Center, 50 W. Washington, Chicago, Illinois, Room 3004.

47. This language is akin to an arrest warrant which directs a sheriff or police officer to arrest an individual and then bring him before the judge for a bond hearing, (arrest warrants often have an initial ex parte bond amount stated on them, just like the body attachment). No sheriff or law enforcement officer would believe they could take a prisoner to jail and hold him there indefinitely pursuant to an arrest warrant. They know, as do we, that they can only hold the arrestee under an arrest warrant for as long as it is necessary to bring him before the judge at the first opportunity.

48. This means that the Sheriff and Director were without any legal authority to seize and then hold the Petitioner in the Cook County Jail under the June 21, 2022 "second" Body Attachment Order without also having a new "second" unexpired Commitment Order commanding that Petitioner be "committed to the Cook County Jail there to remain until he shall have purged himself of contempt". No valid or enforceable Order existed on June 28, 2022 under which the Sheriff was authorized to hold Petitioner in jail after seizing him. Perhaps they could seize Petitioner under the

June 21, 2022 Body Attachment, but they could not hold him in jail because there was no new unexpired Commitment Order.

**C. Ground Three: Continued Detention Violates Due Process — Duration Exceeds Coercive Purpose and Periodic Review Has Been Denied**

49. The Supreme Court established the controlling principles for civil confinement in *Jackson v. Indiana*, 406 U.S. 715, 738 (1972). In *Jackson*, the Court held that "[d]ue process requires that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed." Id. at 738. When an individual's commitment "rests on proceedings that did not purport to bring into play, indeed not even consider relevant, any of the articulated bases for exercise of [the State's] power," it violates due process. Id. at 737.

50. Clearly established Federal law regarding the due process rights of an individual under the Constitution of the United States, as determined by the Supreme Court of the United States, is as follows:

> "Due process requires that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed." *Jackson v. Indiana* 406 U.S. 715, 738, 32 L. Ed. 2d 435, 451, 92 S. Ct. 1845, 1858 (1972),
> Where it is alleged that the duration of an individual's confinement no longer bears a reasonable relationship to the purpose for which he is committed a substantial federal constitutional claim relating to denial of due process is present. *Jackson v. Indiana*, 406 U.S. 715, 32 L. Ed. 2d 435, 92 S. Ct. 1845 (1972); *McNeil v. Director, Patuxent Institution*, 407 U.S. 245, 32 L. Ed. 2d 719, 92 S. Ct. 2083 (1972).
> At the least, due process requires that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed. *Jackson v. Indiana*, 406 U.S. 715, 738, 92 S. Ct. 1845, 1858, 32 L. Ed. 2d 435, 451 (1972)
> Accordingly, the court in *Lambert* reasoned, inasmuch as imprisonment for civil contempt is for the purpose of compelling compliance with a judicial directive, when the confinement has lost its coercive force and consequently no longer bears a reasonable relationship to the purpose for which the contemnor was committed, due process requires that he be released. *In re Grand Jury Investigation*, 600 F.2d 420, 424-425 (1979) citing: *Shillitani v. United States*, 384 U.S. 364, 371, 86 S. Ct. 1531, 1536, 16 L. Ed. 2d 622, 628, (1966) *Jackson v. Indiana*, 406 U.S. 715, 738, 92 S. Ct. 1845, 1858, 32 L. Ed. 2d 435, 451 (1972) and *McNeil v. Director, Patuxent*

*Institution*, 407 U.S. 245, 251, 92 S. Ct. 2083, 2087-2088, 32 L. Ed. 2d 719, 724 (1972)

51. The principle established in *Jackson v. Indiana* and *In re Grand Jury Investigation*, 600 F.2d 420 (3d Cir. 1979), is that civil contempt incarceration is permissible only so long as it retains a genuinely coercive character. Once the confinement has lost its coercive force and consequently no longer bears a reasonable relationship to the purpose for which the contemnor was committed, due process requires that he be released.

52. The principle is straightforward: civil contempt incarceration serves a coercive purpose—to compel compliance with a court order. Once it becomes clear that imprisonment cannot compel compliance, the detention transforms from coercive sanction to punitive punishment, violating due process.

53. Petitioner has now been incarcerated for more than three years and eight months (since June 28, 2022). Even if there was an arguably coercive purpose behind the initial order, continued incarceration can have no coercive effect because:

- The CBOE stock Petitioner was ordered to transfer was sold in January/February 2011, over a decade before the contempt order, for $2.4 million;
- That $2.4 million was transferred to the SF Trust, a trust established by Petitioner in 1995;
- All $2.4 million has been expended since the trust's establishment; no funds remain; and
- Petitioner's 2020 income was only $26,308 from all sources (Exhibit C).

54. At Petitioner's income level, satisfying the alternate option of a $10 million purge would take 380 years ($10,000,000 ÷ $26,308 = 380 years). No evidence shows Petitioner, or the trust, ever or currently possesses—or will ever possess—the $10,000,000 demanded.

55. In its June 28, 2024 interlocutory order, the Illinois Appellate Court acknowledged that civil contempt confinement loses its coercive character once imprisonment can no longer coerce compliance. On final review in 2025 IL App (1st) 240835 (unpublished Rule 23 order), the court

reaffirmed that framework but held that Petitioner had not met his burden to show that his confinement had lost all coercive effect. But the appellate court also acknowledged that Petitioner had presented documentary evidence of the trust's closure and the liquidation of the CBOE shares. The court did not reject the mathematical calculation showing that $2.4 million in proceeds, depleted over 11 years, would naturally be exhausted.

56. The undisputed facts are that Petitioner cannot comply because the funds do not exist—not that he will not comply out of recalcitrance. Concluding otherwise was an unreasonable application of *Jackson*. Under *Jackson*, a contemnor's burden to show lack of coercion is satisfied when he demonstrates that he lacks the present ability to comply despite a substantial period of incarceration. The Illinois courts failed to reasonably apply *Jackson* to the evidence before it, treating the length of confinement and the impossibility of compliance as essentially irrelevant.

57. Due process under *Jackson* requires more than a conclusory label; it requires a fact-based determination that the nature and duration of confinement still bear a reasonable relation to its coercive purpose. At no point has any Illinois court held an evidentiary hearing specifically directed to whether, in light of the passage of time and changed circumstances, Petitioner's continued incarceration remains coercive or has become punitive. The only "finding" on that issue is Judge Forti's bare, unsupported assertion in his July 31, 2024 order that the detention "remains coercive."

58. At this temporal threshold—more than three years in custody—incarceration cannot reasonably be characterized as coercive. It has become purely punitive, no longer serving any legitimate coercive purpose. During Petitioner's incarceration, both of his Greek immigrant parents—who fled persecution in Turkey to come to America—died sick and alone without being able to see their son and without him being able to care for them. These irreparable consequences

demonstrate that the detention has transformed from a coercive sanction into punishment that can never be undone.

59. Continued detention violates due process under *Jackson v. Indiana*. Because Petitioner's non-compliance is due to impossibility—not recalcitrance—continued incarceration can serve no coercive purpose and the confinement is improper. Petitioner must be released immediately. Petitioner's continued confinement without a finding that he has the ability to comply is in violation of due process.

60. While there is no case which states how often a hearing should be held to determine if continued incarceration violates a civil contemnor's due process rights, it is obvious that such hearings must be held periodically in order to satisfy due process. Otherwise how can the violation of a civil contemnor's due process right to be free from incarceration of an unreasonable duration be prevented? If a state court does not hold such periodic hearings, then in every case where a contemnor is incarcerated for civil contempt and does not purge the contempt, the contemnor's due process rights will eventually be violated at some point. That would be a system designed to assure that there will eventually be a violation of a contemnor's due process rights in every case. Such a system cannot stand up to constitutional scrutiny.

61. A good measure for how often such a hearing should be held is contained in Circuit Court of Cook County Local Rule 13.8(a)(iv), which provides in relevant part at subsection (vii):

> **(vii) Return to Court** - Every order remanding a contemnor to the custody of the Cook County Department of Corrections for indirect civil contempt must include a provision that the **contemnor will be returned to the court for status at periodic intervals, but in no event less frequently than every thirty (30) days.** (emphasis added)

62. It is a violation of the Petitioner's due process rights under the Constitution of the United States to hold him in custody without periodically having a hearing where evidence is taken which allows the court to inquire as to Petitioner's attempts to purge contempt, his ability to purge

contempt, and to make an assessment as to whether or not further incarceration would be reasonably likely to coerce compliance.

63. Although Local Rule 13.8(a)(iv) is a matter of state procedure, it is the mechanism Cook County has adopted to implement the due process principle that civil contempt incarceration must remain coercive rather than punitive.

64. Despite the mandatory language of Local Rule 13.8(a)(iv), the trial court has systematically failed to conduct adequate periodic review. Petitioner was taken into custody on June 28, 2022. Through May 7, 2024, the court should have held approximately 30 status hearings (one every 30 days for 22 months), yet only held 14. Moreover, at none of these hearings did the trial court receive evidentiary testimony, inquire into Petitioner's ability to comply, assess whether incarceration had become punitive, make findings regarding the continued appropriateness of detention, or consider alternative sanctions.

65. Moreover, Petitioner did not receive his first Local Rule 13.8(a)(iv) hearing until fifty-seven (57) days after being taken into custody — and only because he filed an Emergency Verified Motion to Set Status on Respondent's Confinement for Contempt as Required by Local Rule 13.8(a)(IV), demanding that the circuit court comply with its own mandatory local rule. The failure of periodic review was therefore not an occasional lapse but a consistent, structural pattern that began on Day One of his confinement and continued without interruption throughout.

66. Since Petitioner's appeal, the trial court has refused to hold any further Local Rule 13.8(a)(iv) hearings, claiming it lacked jurisdiction while the appeal was pending. However, on April 11, 2025, the Appellate Court held that trial courts do retain jurisdiction to conduct such hearings even during an interlocutory appeal, recognizing that "circumstances subsequent to the appealed judgment" fall within collateral matters within the trial court's residual jurisdiction. Despite this clear ruling, Petitioner has not had a single compliance-status hearing since May 7,

2024, and his incarceration has continued without any judicial review of whether it remains coercive.

67. As a matter of constitutional necessity, the trial court must be ordered to immediately hold an evidentiary hearing to determine whether Petitioner's continued detention serves any coercive purpose; if not, release him. If incarceration is determined appropriate pending renewed contempt proceedings, the trial court must: (a) hold mandated 30-day review hearings at which evidence is received and findings are documented; and (b) ensure that any new contempt order provides a purge condition tailored to Petitioner's present demonstrated ability to comply.

**D. Ground Four: Continued Detention Beyond Six Months Without a Finding of Recalcitrance Violates Due Process**

68. Clearly established Federal law regarding the due process rights of an individual under the Constitution of the United States, as determined by the Supreme Court of the United States, holds that "Due process requires that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed." *Jackson v. Indiana* 406 U.S. 715, 738, 32 L. Ed. 2d 435, 451, 92 S. Ct. 1845, 1858 (1972), *McNeil v. Director, Patuxent Institution*, 407 U.S. 245, 32 L. Ed. 2d 719, 92 S. Ct. 2083 (1972), *Shillitani v. United States*, 384 U.S. 364, 371, 86 S. Ct. 1531, 1536, 16 L. Ed. 2d 622, 628, (1966)

69. .Illinois courts have recognized a critical temporal benchmark for assessing when civil contempt incarceration ceases to be coercive and becomes punitive. See *In re Marriage Betts*, 200 Ill. App. 3d 26 (1990). In Betts, the court explained that:

> [n]o jail sentence for indirect civil contempt will exceed six months **unless the respondent, through his continued recalcitrance, makes it exceed six months**. Prior to the expiration of a six-month period of incarceration, an indirect civil contemnor has ample opportunity either to comply with the court order in question or to explain why he or she cannot comply with it.

*Id*. at 57 (emphasis added). This six-month limit recognizes that detention beyond this threshold in a civil (non-criminal) matter demands explicit justification rooted in the contemnor's willful refusal to comply—recalcitrance—not mere inability.

70. Illinois law puts a six (6) month limit on the length of incarceration for indirect civil contempt, with one exception. This six (6) month limit is analogous to the limit on a sentence for a misdemeanor, which is one (1) year. Just as it would be a violation of due process to hold a person convicted of a misdemeanor in jail for more than one (1) year, it is a violation of due process to hold a contemnor for more than six (6) months, unless the exception is proved.

71. The only exception to this six (6) month limit on incarceration for indirect civil contempt is where a court makes a finding that the reason a contemnor has not complied and purged himself of the contempt is his recalcitrance. Of course it is axiomatic that in order for a court to make a finding it must first conduct a hearing where it receives evidence on the issue it is to rule on. In order for a civil contemnor to be held in custody for more than six (6) months, a court must hold a hearing where the evidence establishes that the reason he has not purged himself of the contempt by complying with the court's order is recalcitrance. The circuit court has made no such finding. Therefore, the Petitioner is being held longer than authorized by law, in violation of his due process rights under the Fifth and Fourteenth Amendments to the Constitution of the United States as determined by the Supreme Court of the United States. *Shillitani v. United States*, 384 U.S. 364 (1966).

72. In this case the Sheriff has been holding the Petitioner in jail for indirect civil contempt for more than (6) six months, despite the fact that no evidentiary hearing has been held where the evidence establishes, and the court finds, that the reason for Petitioner's continued non-compliance is recalcitrance. This is a violation of Petitioner's due process rights. Incarceration for indirect civil contempt is only to be for no more than six (6) months unless there is a finding that the contemnor's

recalcitrance is the reason for his failure to comply. The circuit court has made no such finding. Therefore, the Petitioner is being held longer than authorized by law, in violation of his due process rights under the Fifth and Fourteenth Amendments to the Constitution of the United States as determined by the Supreme Court of the United States. *Shillitani v. United States*, 384 U.S. 364, 371, 86 S. Ct. 1531, 1536, 16 L. Ed. 2d 622, 628, (1966)

73. In order for a civil contemnor to be held in custody for more than six (6) months, a court must hold a hearing where the evidence establishes that the reason he has not purged himself of the contempt is recalcitrance. No evidentiary hearing focused on impossibility versus recalcitrance was ever held. The circuit court refused to receive evidence on that question at any of the periodic review hearings, and the only opportunity Petitioner had to present proof of impossibility was at the Motion to Purge or Vacate hearing—after he had already been incarcerated for more than a year beyond the six-month threshold. This denial of a meaningful hearing violated Petitioner's due process rights under *Jackson v. Indiana*, *McNeil v. Director, Patuxent Institution*, and *Shillitani v. United States*.

74. The undisputed documentary evidence submitted to the state court established impossibility of compliance. See Exhibit A (2017 Interpleader Decision)(it was known by Harnack that shares were liquidated before the judgment); Exhibit B (2011 Dissolution Judgment)(confirms Harnack vastly inflated the stock shares in the marital estate and awarded Petitioner accounts now in dispute; Exhibit C (Tax Returns)(Petitioner's annual income is $26,308 or less). The state court acknowledged this evidence but found that Petitioner 'may have' hidden assets—pure speculation contradicting the documentary record. Under § 2254(d)(2), this factual determination was unreasonable and is refuted by Petitioner's IRS transcripts.

75. The 2025 appellate order did not make any explicit finding that Petitioner's non-compliance is due to recalcitrance rather than impossibility. Instead, the court assumed that Petitioner bore the

burden to prove impossibility with "definite and explicit evidence," and concluded he had not met that burden. But under Illinois law, once a contemnor asserts impossibility and presents evidence supporting it, the burden shifts to the trial court to make an explicit finding of recalcitrance in order to justify continued custody beyond six months. The appellate court's failure to require—or even address—this explicit recalcitrance finding is an unreasonable application of *Jackson v. Indiana*.

76. Holding Petitioner in custody for more than three years without any evidentiary finding of recalcitrance, despite his repeated assertions of impossibility, exceeds any reasonable coercive purpose and renders the confinement punitive. Illinois' own six-month benchmark, established in *In Re Marriage Betts*, confirms that such prolonged detention without a recalcitrance finding is inconsistent with due process.

77. Petitioner must be released immediately. If the trial court determines that renewed civil contempt proceedings are appropriate, any new order must provide a purge condition calibrated to Petitioner's demonstrated present ability to pay and must ensure that any resulting confinement is coercive rather than fixed-term punitive detention.

Petitioner's continued confinement, without meaningful opportunities for judicial review, is a violation of due process.

78. Due process requires that the nature and duration of civil confinement bear a reasonable relation to the purpose for which the individual is confined. *Jackson v. Indiana*, 406 U.S. 715, 738 (1972). Civil contempt incarceration is coercive, not punitive: its purpose is to compel compliance with a court order, not to punish the contemnor. *Shillitani v. United States*, 384 U.S. 364 (1966). Once incarceration loses its coercive character—because compliance is impossible or because prolonged detention has ceased to bring the contemnor any closer to compliance—continued confinement serves no legitimate coercive purpose and becomes purely punitive, in violation of due process. *In Re Grand Jury Investigation*, 600 F.2d 420, 424–425 (3d Cir. 1979) ("[W]hen the

confinement has lost its coercive force and consequently no longer bears a reasonable relationship to the purpose for which the contemnor was committed, due process requires that he be released.").

79. The constitutional requirement of periodic, meaningful judicial review flows directly from *Jackson*'s reasonable-relation principle. If a court never examines whether detention has ceased to be coercive, it cannot satisfy itself that the confinement remains constitutionally permissible. There is no meaningful difference between a court that openly ignores *Jackson* and a court that pays lip service to *Jackson* while systematically declining to conduct the factual inquiry *Jackson* demands. Either way, the contemnor is deprived of the constitutional protection to which he is entitled. The periodic hearing requirement is not a procedural nicety—it is the mechanism through which the substantive due process guarantee of *Jackson* is made real.

80. Cook County Circuit Court Local Rule 13.8(a)(iv)(vii) operationalizes this constitutional requirement by mandating that every order remanding a contemnor to custody "must include a provision that the contemnor will be returned to the court for status at periodic intervals, but in no event less frequently than every thirty (30) days." This rule reflects the Cook County court system's own recognition that 30-day review is the minimum necessary to ensure that civil contempt detention does not silently transform into unconstitutional punishment. While the rule is a matter of state procedure, its function is to implement the federal due process floor established by *Jackson v. Indiana* and *McNeil v. Director, Patuxent Institution*, 407 U.S. 245 (1972).

81. The record of review in this case has been constitutionally inadequate in both quantity and quality. From the date Petitioner was taken into custody on June 28, 2022 through May 7, 2024—a period of approximately twenty-two months—the court should have held no fewer than thirty status hearings at 30-day intervals under Local Rule 13.8(a)(iv). In fact, only fourteen hearings occurred during that period. Petitioner did not even receive his first hearing until fifty-seven days after being taken into custody, and only because he filed an Emergency Verified Motion to Set

Status on Respondent's Confinement for Contempt as Required by Local Rule 13.8(a)(IV), demanding compliance with the local rule. The failure of periodic review was therefore not an isolated lapse but a consistent, structural pattern that commenced on the first day of his confinement and continued throughout.

82. The hearings that did occur were substantively hollow. At none of the fourteen status hearings did the circuit court receive evidentiary testimony, make inquiry into Petitioner's present ability to comply, assess whether continued incarceration retained any realistic coercive effect, or make findings as to whether the nature and duration of Petitioner's detention continued to bear a reasonable relation to its coercive purpose. These were administrative check-ins, not the constitutionally meaningful reviews that *Jackson* demands. A hearing that takes no evidence and makes no findings on the constitutionally relevant questions is not a hearing within the meaning of due process—it is a procedural formality that satisfies neither the local rule nor the Constitution.

83. Since May 7, 2024—now more than nine months ago—no compliance-status hearing of any kind has been held. The trial court refused to hold hearings during the pendency of the appeal, claiming lack of jurisdiction. That jurisdictional claim was squarely rejected: on April 11, 2025, the Appellate Court held that trial courts retain jurisdiction to conduct Local Rule 13.8(a)(iv) review hearings even while an interlocutory appeal is pending, because such hearings address "circumstances subsequent to the appealed judgment" and fall within the trial court's residual jurisdiction over collateral matters. Despite this unambiguous ruling, the trial court has still not held a single hearing. Petitioner has now been incarcerated for more than three and a half years with no judicial review of any kind since May 2024—a complete and ongoing deprivation of the periodic review that due process requires.

84. The 2025 Illinois Appellate Court decision affirming Petitioner's continued confinement is an unreasonable application of clearly established federal law under 28 U.S.C. § 2254(d)(1) and

an unreasonable determination of facts under § 2254(d)(2). The Appellate Court recited the *Jackson* standard but failed to apply it to the facts before it. It treated Judge Forti's bare, unsupported July 31, 2024 declaration that confinement "remains coercive"—issued without a hearing, without taking evidence, and without any factual inquiry into present ability to comply or the realistic prospect of coerced compliance—as a sufficient finding under *Jackson*. It is not. *Jackson* requires a genuine, evidence-based determination that the nature and duration of commitment bear a reasonable relation to its coercive purpose. A conclusory label, attached without factual support, is the antithesis of what *Jackson* demands. The state court's acceptance of that bare assertion as adequate is an objectively unreasonable application of *Jackson*.

85. This Court should grant habeas relief on this ground and order either Petitioner's immediate release or, at minimum, an evidentiary hearing before the trial court at which the court must: (a) receive evidence on Petitioner's present ability to comply with the purge condition; (b) determine whether continued incarceration retains any realistic coercive effect or has become purely punitive; (c) make explicit written findings on both questions; and (d) if continued detention is deemed appropriate, enter an order that provides a meaningful, ability-calibrated purge condition, and immediately resume mandatory 30-day compliance-status hearings as required by Local Rule 13.8(a)(iv). Absent such relief, Petitioner will remain indefinitely imprisoned without any judicial examination of whether his detention serves any constitutionally permissible purpose—precisely the outcome that *Jackson*, *McNeil*, and *Shillitani* forbid.

## CONCLUSION

**WHEREFORE**, Petitioner Steve Fanady respectfully prays that this Court:

1. Order the immediate release of Petitioner from custody in the Cook County Jail, as all orders authorizing his detention have expired pursuant to 735 ILCS 5/12-107.5(a), (c) and no valid legal authority for his continued detention exists;

2. Declare that Petitioner has been deprived of his due process rights under the Fifth and Fourteenth Amendments to the Constitution of the United States by reason of:

- Incarceration without lawful judicial authority
- Incarceration that has lost all coercive effect and become purely punitive
- Prolonged incarceration for civil contempt without any evidentiary finding that Petitioner's noncompliance is due to recalcitrance rather than impossibility
- Systematic failure to conduct periodic judicial review as mandated by local rule and due process

3. Order that Petitioner may not again be taken into custody for indirect civil contempt in *Harnack v. Fanady*, 08D2844, unless and until the trial court has conducted a new evidentiary hearing on the issue of indirect civil contempt, with all due process protections attendant thereto, including notice, an opportunity to be heard, and a finding supported by evidence that Petitioner has the present ability to comply with any purge condition imposed.

4. Provide interim relief to Petitioner, including placing him on GPS or electronic monitoring

5. Grant Petitioner whatever other relief this Court deems just and appropriate.

Respectfully submitted,

Laura Grochocki
Attorney for Steve Fanady
200 East Illinois Street, Suite 3211
Chicago, Illinois 60611
(312) 620-0671
lauraglaw@aol.com
Attorney No. 6239444

Robert S. Held
Attorney for Steve Fanady
Held Law Offices
20 North Wacker Drive, Ste 1000
Chicago, IL 60606
(708) 265-7222
rheld@heldlawoffices.com
Attorney No. 6230978

**CERTIFICATE OF SERVICE**

I, Laura Grochocki, attorney for the Petitioner certifies under penalties as provided by law that I caused to be served the above and foregoing via the EM/ECF electronic filing system to all the attorneys for all parties of record on or before the 2nd day of March 2026 before 6:00 p.m.

/s/ Laura Grochocki
Laura Grochocki