FILED DATE: 7/28/2022 1:19 PM 2008D002844

# EXHIBIT B

FILED DATE: 7/28/2022 1:19 PM 2008D002844

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, DOMESTIC RELATIONS DIVISION**

| | | |
|---|---|---|
| PAMELA HARNACK,<br>v.<br>STEVE FANADY, | ) | No. 08 D 02844 |
| JEROME ISRAELOV,<br>v.<br>ALPHA INDUSTRIES LLC, et al. | ) | Consolidated With<br>No. 11 CH 07166 |
| CBOE HOLDINGS, INC., et al.<br>v.<br>PAMELA HARNACK, et al. | ) | Consolidated With<br>No. 11 CH 35656 |

## ORDER

This matter having coming on for trial, Petitioner, Pamela Harnack being represented by David H. Hopkins of Schiller Ducanto & Fleck LLP and Sheldon G. Kirshner of the Law Offices of Sheldon G. Kirshner, P.C., Respondent, Steve Fanady being represented by Joel A. Brodsky, Plaintiffs/Respondents, Jerome Israelov ("Israelov") and ISRFAN Partnership ("ISRFAN"), being represented by and through their attorneys, Dahl & Bonadies, LLC, Respondent, Michelle Marme and FANMARE being represented by C. Barry Montgomery and David L. Applegate of Willams Montgomery & John, Ltd, the Court hearing testimony, considering all evidence and argument, and being otherwise fully advised in the premises, **HEREBY FINDS AS FOLLOWS:**

## INTRODUCTION

Currently before the Court for resolution is the ownership of 120,000 shares of CBOE Holdings Inc. stock and the associated dividends held by Computershare Shareowner Services, LLC ("Computershare"). Claimants to portions of the stock and dividends are Jerome Israelov, Michelle Marme, and Pamela Harnack. The relevant facts have been agreed upon, for the most part, by all involved. However, there has been great delay and upheaval caused mostly by the many machinations of Steve Fanady in his attempt to deceive his ex-wife and his former business partners. It was Mr. Fanady's antics that created the chaos in the pre-decree divorce case. It was Mr. Fanady who fabricated a judgment and forged a judge's stamp. It was Mr. Fanady who transferred an additional 120,000 shares of stock to locations which he now refuses to disclose.

The Appellate Court's remarks in its opinion of November 21, 2104 must be noted again: ". . . Fanady chose instead to make underhanded efforts to prevent Harnack from getting her appropriate share of the marital assets and to avoid the trial court's jurisdiction. *His behavior in this case has been so egregious, so contemptuous of the law and the court*, that he cannot now complain that substantial justice requires that the judgment for dissolution of marriage be set aside (Emphasis not in the original). "

FILED DATE: 7/28/2022 1:19 PM 2008D002844

Jerome Israelov is an innocent victim of Mr. Fanady's underhanded actions. He should receive promptly 40,000 shares currently being held by Computershare.

The case as to Michelle Marme is a bit more complicated. Harnack's arguments that Marme's hands are not clean and that she colluded with Fanady to deceive Harnack give this Court pause, but ultimately they are not legally sufficient. In the end, Marme should receive the shares that she demands.

Equitably, Ms. Harnack's arguments are compelling, but legally, her claims fail. Unfortunately, she is left to chase Mr. Fanady for her just share of the marital estate.

Factual Findings As To Israelov.
<u>The ISRFAN Partnership And The Purchase Of The ISRFAN Seat</u>

1. Jerome Israelov first met Fanady during a six month period in 1987 while Fanady was a customer of clearing firm at the Chicago Board of Trade ("CBOT") where Israelov was working as a clerk. Thereafter, Israelov and Fanady did not speak again until approximately 2005 while at an informational meeting pertaining to the demutualization of the CBOT.

2. Between 2005 and January 2010, Israelov and Fanady spoke approximately six or seven times. Around the middle of 2009, Israelov had identified the acquisition of a membership (or "Seat") at the Chicago Board Options Exchange ("CBOE") as potentially good investment. Late in 2009, Fanady called Israelov and proposed that the two of them invest as equal partners in the purchase of a CBOE Seat.

3. On January 26, 2010, Israelov and Alpha, an entity wholly owned and controlled by Fanady, entered into a 50/50 partnership to form the ISRFAN Partnership for the purpose of purchasing a CBOE Seat. ISRFAN, through Alpha, purchased CBOE Membership No. 300124 for $2,625,000.00 (the "ISRFAN Seat"). Israelov contributed half of the purchase price, or $1,312,500.00. Fanady, through Alpha, contributed the other half.

4. In order to purchase a CBOE membership, a person or entity had to be a member of the CBOE. Because Israelov and ISRFAN were not members of the CBOE but Alpha was, Israelov and Fanady agreed that Alpha would purchase and hold the ISRFAN seat for the benefit of ISRFAN.

5. While ISRFAN owned the ISRFAN Seat (No. 300124), ISRFAN leased the seat and, pursuant to Section 5.02 of the ISRFAN Partnership Agreement, divided any rental payments equally – 50% to Israelov and 50% to Alpha.

6. On June 14, 2010, the CBOE demutualized and the ISRFAN Seat was exchanged for 80,000 shares of CBOE Holdings, Inc. ("CBOE Holdings") common stock. Pursuant to the agreement between Israelov and Fanady, the 80,000 shares were held in an account in the name of Alpha at Mellon Investor Services LLC d/b/a BNY Mellon Shareowner Services ("Mellon") for the benefit of ISRFAN. Mellon is now known as Computershare Shareowner Services, LLC ("Computershare"). ISRFAN divided any dividends issued with

FILED DATE: 7/28/2022 1:19 PM 2008D002844

respect to the stock equally - 50% to Israelov and 50% to Alpha.

7. Pamela Harnack was never a partner in the ISRFAN Partnership. Likewise, Marme was never a partner in the ISRFAN Partnership. In this regard, Marme does not claim a right to or an ownership interest in any shares of CBOE Holdings, Inc. common stock (or any corresponding dividends) exchanged in connection with the ISRFAN Seat (No. 300124).

Factual Findings As To Marme,
The Fanmare Partnership And Fanmare's CBOE Memberships

8. On March 27, 2005, Michelle Marme and Fanady entered into a 50/50 partnership to form the Fanmare Partnership.

9. On or about October 21, 2005, Fanady purchased, for the benefit of Fanmare, CBOE Seat No. 300120. On or about September 19, 2006, Fanady purchased, for the benefit of Fanmare, CBOE Seat No. 25A116.

10. On June 30, 2009, Alpha replaced Fanady as a 50% partner in the Fanmare Partnership. Thereafter, Fanmare's CBOE Seat No. 300120 was held in the name of the Fanmare Partnership with the CBOE and Fanmare's CBOE Seat No. 25A116 was held in the name of Alpha, for the benefit of Fanmare.

11. On June 14, 2010, the CBOE demutualized and each of Fanmare's CBOE Seats (Nos. 300120 and 25A116) were exchanged for 80,000 shares of restricted CBOE Holdings, Inc. common stock. The 80,000 shares that were exchanged in connection with Seat No. 300120 were held in an account in the name of Fanmare at Mellon (now Computershare). The 80,000 shares that were exchanged in connection with Seat No. 25A116 were held in an account in the name of Alpha, for the benefit of Fanmare, at Mellon.

12. In late September or early October 2010, Fanady represented to Marme that an SEC ruling barred Marme from selling or trading the A-1 shares when those shares became tradeable under CBOE rules in December 2010. Fanady's representation concerning a purported SEC ruling was incorrect. However, Marme agreed to allocate all A-1 shares to Alpha Industries and to allocate all A-2 shares to Marme. They documented that agreement in an addendum to the Fanmare partnership agreement dated November 13, 2010.

13. Harnack has not proven that Marme colluded with Fanady to deprive her of her portion of the marital estate.

The Demutualization Of The CBOE And The Exchange Of
CBOE Holdings, Inc. Common Stock For CBOE Seats

14. CBOE Holdings is the parent corporation of the CBOE. Prior to June 14, 2010, members of the CBOE owned CBOE "memberships," which were often commonly referred to as "Seats." On June 14, 2010, the CBOE demutualized and conducted an initial public offering ("IPO") of CBOE Holdings common stock.

FILED DATE: 7/28/2022 1:19 PM 2008D002844

15. In connection with CBOE's demutualization and simultaneous IPO, an account was established at Mellon for each of the former members of CBOE to hold the CBOE Holdings common stock that they were issued in exchange for their CBOE memberships. Mellon is now known as Computershare. 80,000 shares of restricted CBOE Holdings common stock were issued in exchange for each CBOE Seat.

16. Immediately prior to the June 14, 2010 demutualization and IPO, Alpha held two (2) CBOE Seats in its name: (i) Alpha held CBOE Seat No. 300124 (the ISRFAN Seat), for the benefit of ISRFAN; and (ii) Alpha held CBOE Membership #25A116 for the benefit of Fanmare. Fanmare held CBOE Membership No. 300120 in its own name.

<u>The ISRFAN Seat And Exchange Of 80,000 Shares</u>

17. As part of the demutualization and IPO, Alpha was issued 80,000 shares of restricted CBOE Holdings common stock for the ISRFAN Seat (No. 300124). These 80,000 shares were held in an account at Mellon in the name of Alpha, and consisted of 40,000 shares of restricted Class A-1 stock and 40,000 shares of restricted Class A-2 stock.

<u>Fanmare Seat No. 25A116 And Exchange Of 80,000 Shares</u>

18. As part of the demutualization and IPO, Alpha was also issued 80,000 shares of restricted CBOE Holdings common stock for Fanmare Seat No. 25A116. These 80,000 shares were held in an account at Mellon in the name of Alpha, and consisted of 40,000 shares of restricted Class A-1 stock and 40,000 shares of restricted Class A-2 stock.

<u>Fanmare Seat No. 300120 And Exchange Of 80,000 Shares</u>

19. As part of the demutualization and IPO, Fanmare was issued 80,000 shares of restricted CBOE Holdings common stock for Fanmare Seat No. 300120. These 80,000 shares were held in an account at Mellon in the name of Fanmare, and consisted of 40,000 shares of restricted Class A-1 stock and 40,000 shares of restricted Class A-2 stock.

<u>Expiration Of The Transferability Restrictions</u>

20. On December 15, 2010, restrictions on the transferability of the Class A-1 CBOE Holdings common stock expired and those shares became unrestricted CBOE Holdings common stock (*i.e.*, the shares became freely transferable).

21. On June 13, 2011, the restrictions on the transferability of the Class A-2 CBOE Holdings common stock expired and those shares became unrestricted CBOE Holdings common stock.

<u>Fanady's Creation And Sole Ownership Of Alpha</u>

22. On March 19, 2009, Fanady created and settled the 2009 SF Trust pursuant to the laws of Belize. Orion Corporate & Trust Services Ltd. ("Orion") is, and at all times was, the Trustee, and Fanady is the sole beneficiary.

FILED DATE: 7/28/2022 1:19 PM 2008D002844

23. On March 31, 2009, Orion, as Trustee of the 2009 SF Trust, formed Pantheon, LLC ("Pantheon"), a Nevis limited liability company. Orion, as Trustee of the 2009 SF Trust, was the sole member of Pantheon. Sentinel Management, LLC ("Sentinel"), a Nevis limited liability company, was appointed as the Manager of Pantheon.

24. On April 3, 2009, Sentinel, as Manager of Pantheon, formed Alpha (a/k/a Alpha Industries, LLC), a Delaware limited liability company. Pantheon was the sole member of Alpha. Fanady was then appointed as the Manager of Alpha.

25. Fanady, through his 2009 SF Trust, was thus not only the Manager of Alpha but also its sole, 100% owner. In fact, Fanady admitted and confirmed that he was the sole, 100% owner of Alpha in numerous letters and other correspondence he submitted to the CBOE during Alpha's application process to become a member of the CBOE.

Fanady's Theft And Conversion Of 40,000 Shares
Of CBOE Holdings Common Stock That Belonged To ISRFAN

26. On December 28, 2010, Fanady opened a brokerage account, No. FFR XXX990, at SunTrust Investor Services, Inc. ("SunTrust") in the name of Alpha ("Alpha's SunTrust Acct."). Fanady then executed a Transfer Of Assets Form which initiated the transfer of 80,000 shares of CBOE Holdings common stock from Alpha's account at Mellon to Alpha's SunTrust Acct. 40,000 of these 80,000 shares belonged to ISRFAN. The other 40,000 shares belonged to Fanmare.

27. On or about January 4, 2011, pursuant to Fanady's actions, all 80,000 shares of unrestricted CBOE Holdings common stock held in the name of Alpha, including 40,000 shares belonging to ISRFAN, were transferred out of Alpha's account at Mellon and into Alpha's SunTrust Acct. On January 12, 2011, Fanady received email confirmation of this transfer from his banker at SunTrust, Andres Pimentel ("Pimentel").

28. During this same time that Fanady was carrying out these acts, he was also purposely misleading Israelov. Specifically, Israelov emailed Fanady on December 21, 2010 asking Fanady whether he had made any progress getting the first 20,000 of ISRFAN's shares transferred to Israelov. Fanady responded by stating that he was "getting papers ready to open an account so that [he could] begin the transfer."

29. Likewise, shortly before January 14, 2011, Israelov had a telephone conversation with Fanady in which he asked Fanady about transferring Israelov's 50% interest in ISRFAN's former Class A-1 shares. During this conversation, Fanady told Israelov to forward his account information and Fanady would then transfer the shares. Accordingly, on January 14, 2011, Israelov emailed Fanady the account information necessary to transfer 20,000 shares to Israelov. Fanady responded, without further explanation, that the transfer "probably won't happen overnight" and that he would likely "have to jump through a hoop or two."

FILED DATE: 7/28/2022 1:19 PM 2008D002844

30. Fanady, however, never transferred the 20,000 shares to Israelov, and instead ignored Israelov's repeated communications, thus prompting Israelov's attorney to send a letter to Fanady and January 31, 2011, requesting that Fanady provide information regarding ISRFAN's 40,000 former Class A-1 shares and an estimate of when 20,000 of those shares would be delivered to Israelov.

31. On February 1, 2011, the very next day after receiving the letter from Israelov's attorney, Fanady sent an email to Pimentel at SunTrust inquiring about the status of the shares of CBOE Holdings common stock in Alpha's SunTrust Account.

32. Then, on February 3, 2011, Fanady sent a letter to Pimentel at SunTrust authorizing the transfer of all 80,000 shares of CBOE Holdings common stock from Alpha's SunTrust Account to an account in the name of Pantheon at Pictet & Cie in Switzerland.

33. On February 9, 2011, Fanady sent multiple emails to Pimentel to check on the status of the transfer of the shares to Pantheon's account at Pictet & Cie.

34. Finally, on February 15, 2011, the 80,000 shares of CBOE Holdings common stock in Alpha's SunTrust Acct. were transferred to Pantheon's account at Pictet & Cie in Switzerland.

35. Shortly after February 15, 2011, Fanady finally agreed to speak with Israelov but only in-person. Israelov and Fanady met at Peet's Coffee in Winnetka, IL. During this meeting, Israelov asked Fanady why he had not transferred 20,000 of ISRFAN's shares into Israelov's securities account at UBS. Knowing that he had already transferred ISRFAN's 40,000 shares to Pantheon's account in Switzerland, Fanady told Israelov, for the first time, that he could not transfer the shares because he was in the middle of a divorce and that a temporary restraining order had been entered on February 15, 2011. He also told Israelov that he was not the owner of Alpha, that Alpha was owned by Pantheon, and that that Pantheon was "two people on the Island of Nevis." Fanady further mentioned to Israelov that Israelov should open a securities account in the name of ISRFAN. Israelov did not trust Fanady and thus did not open up a securities account in the name of ISRFAN.

36. On February 25, 2011, Israelov initiated the Israelov Action by filing a "Verified Complaint In Equity For Mandatory Injunction, Breach Of Partnership Agreement And Other Relief" against Alpha and Fanady, asserting claims for breach of contract, conversion, and breach of fiduciary duty.

37. On June 13, 2011, Israelov and Alpha entered into a Settlement Agreement in which Alpha admitted that it had received its 50% interest in the 80,000 shares issued for the ISRFAN Seat (No. 300124) and agreed that Israelov was entitled to the remaining 40,000 shares held in Alpha's account at Mellon for the benefit of ISRFAN. The Settlement Agreement contemplated that the remaining 40,000 shares would be distributed to ISRFAN and then Israelov, but was conditioned upon the court in the Divorce Action dissolving various injunctions prohibiting the transfer of the shares.

FILED DATE: 7/28/2022 1:19 PM 2008D002844

Harnack And Fanady's Marriage,
The Divorce Action, And The Dissolution Judgment

38. Harnack and Fanady were married on October 25, 2003. Harnack and Fanady remained married for four and a half years before Harnack filed for divorce on March 25, 2008

39. On November 1, 2010, Fanady was held in default in the Divorce Action for failure to file an appearance or otherwise plead after his attorney withdrew. On August 3, 2011, following an ex-parte prove-up hearing (the "Prove-up"), the court entered a "Judgment For Dissolution Of Marriage" ("Dissolution Judgment") which dissolved the marriage between Harnack and Fanady and awarded certain alleged marital assets to Harnack and to Fanady.

Harnack's Misunderstanding Or Misrepresentations To The Trial Court
In The Divorce Action With Respect To Fanady's "Sole" Ownership Of CBOE Shares

40. On August 3, 2011, the day the Dissolution Judgment was entered, Harnack knew that Fanady only had a 50% interest in both ISRFAN Partnership and the Fanmare Partnership. In fact, Harnack knew or should have known as early as May 2010, that Israelov was Fanady's partner in ISRFAN and that Marme was Fanady's partner in Fanmare because she disclosed the each of Israelov and Marmae as part of her "Witness Disclosures" in the Divorce Action. Moreover, on June 21, 2010, Harnack's attorney deposed Israelov in the Divorce Action with respect to his partnership with Fanady/Alpha in ISRFAN.

41. Moreover, on February 9, 2011, Harnack filed "Petitioner's Verified Emergency Petition For Temporary Restraining Order And Preliminary Injunction," seeking to enjoin Fanady from transferring any shares of CBOE Holdings common stock. As part of this Verified Petition, Harnack attached as Exhibit B an "Itemization of Marital Assets." Accordingly to Harnack's Itemization and her testimony at trial, Harnack understood and knew that Fanady had only a 50% interest in ISRFAN, which owned CBOE Seat No. 300124. Likewise, Harnack understood and knew that Fanady also had only a 50% interest in Fanmare, which owned CBOE Seat Nos. 300120 and 25A116. In addition, Hanarck was aware that Fanady had also previously been the sole owner of CBOE Seat No. 100303, but that he already had sold that seat for $2,775,000 in 2009 before the CBOE's demutualization and IPO.

42. At the time the Dissolution Judgment was entered on August 3, 2011, Harnack thus knew or should have known that Fanady, through Alpha, had only a 50% interest in ISRFAN, which had owned CBOE Seat No. 300124 before it was exchanged for 80,000 shares of restricted CBOE Holdings common stock on June 14, 2010. Harnack also knew by virtue of Israelov's Action against Fanady and Alpha, which had been consolidated with the Divorce Action pursuant to a motion filed by Harnack, that Fanady, through Alpha, had already taken and received his 50%, or 40,000, of ISRFAN's 80,000 shares of CBOE Holdings common stock.

43. Likewise, at the time of the Dissolution Judgment, Harnack thus knew or should have

FILED DATE: 7/28/2022 1:19 PM 2008D002844

known that Fanady, through Alpha, only had a 50% interest in Fanmare, which owned CBOE seat Nos. 300120 and 5A116 before they were each exchanged for 80,000 shares of CBOE Holdings common stock on June 14, 2010.

44. Harnack also knew or should have known prior to entry of the Dissolution Judgment On August 3, 2011 that Fanady had withdrawn 120,000 shares of CBOE Holdings common belonging to ISRFAN and Fanmare.

45. Despite knowing that Fanady, through Alpha, only had an interest in 120,000 shares and that he had already withdrawn 120,000, Harnack procured a Dissolution Judgment which stated that:

> "During the course of the marriage, the parties have acquired various marital properties, including but not limited to, the following:
>
> * * *
>
> B. The equivalent of 320,000 (Three Hundred Twenty Thousand) shares of Chicago Board of Options Exchange (CBOE) stock (Steve Fanady being 100% owner of at least 280,000);
>
> * * *
>
> F. CBOE stocks in the name of Alpha Industries, LLC;
> G. CBOE stocks in the name of Fanmare Partnership;"

46. At the August 3, 2011 Prove-up, Harnack testified that she had reviewed the Dissolution Judgment and the itemization of the marital property set for in the Dissolution Judgment. Inexplicably, however, Harnack failed to inform the court:

(i) that there were never 320,000 shares of CBOE Holdings common stock because Fanady had sold CBOE Seat No. 301003 prior to the CBOE's demutualization and IPO;

(ii) that Israelov, through ISRFAN, and Marme, through Fanmare, each owned a 50% interests in three (3) of the former CBOE Seats that had each been exchanged for a total of 240,000 shares of CBOE Holdings common stock; or

(iii) that Fanady had already withdrawn 120,000 of these 240,000 shares.

47. Harnack thus caused the trial court to enter a Dissolution Judgment that awarded her 120,000 shares of CBOE Holdings common stock all while knowing that Fanady only had an interest 120,000 shares and had already taken and received all of those shares.

<u>Additional Findings</u>

48. Fanady has no claim to the remaining 40,000 shares held for ISRFAN or the 80,000 shares held for Marme. Thus Harnack has no claim to those shares.

49. Contrary to the property distribution in the Dissolution Judgment, Illinois law prohibits the transfer of ISRFAN's or Marme's property to Harnack.

FILED DATE: 7/28/2022 1:19 PM 2008D002844

50. Harnack should not benefit from her husband's bad acts.

51. Harnack should not benefit from her own misunderstanding or misrepresentation as to the number of shares of CBOE Holdings which were in the marital estate.

52. Harnack has failed to show that the Settlement Agreement between Fanady and Alpha violated the Partnership Act or any injunctions.

53. Neither *res judicata* nor collateral estoppel bars Marme's claim to the 80,000 shares of stock for which she paid and has not received.

54. Harnack failed to show that the November 2010 Fanmare Partnership Addendum was void under the Illinois Uniform Partnership Act.

**THEREFORE, IT IS HEREBY ORDERED:**

A. CBOE Holdings, Inc. and Computershare Shareowner Services, LLC shall immediately transfer, as soon as administratively possible, 40,000 shares of CBOE Holdings, Inc. common stock held in an account at Computershare Shareowner Services, LLC in the name of Alpha Industries, LLC as well as all associated dividends issued and paid to Alpha in connection with those 40,000 shares of CBOE Holdings, Inc. common stock.

B. CBOE Holdings, Inc. and Computershare Shareowner Services, LLC shall immediately transfer, as soon as administratively possible, 80,000 shares of CBOE Holdings, Inc. common stock held in an account at Computershare Shareowner Services, LLC in the name of Michelle Marme and/or Fanmare as well as all associated dividends issued and paid in connection with those 80,000 shares of CBOE Holdings, Inc. common stock.

Associate Judge
David E. Haracz
JUL 1 1 2017
Circuit Court – 1878

ENTER: ______________________

DATE: 7/11/17